Nicholson, C. J.,
delivered the opinion of the Court.
The German National Bank sued William H. Andrews as drawer of the following Bank Check:
“Memphis, January 10th, 1868.
Commercial Bank of Tennessee':
Pay to Bills Payable or bearer, nine hundred and fifty dollars. Wm. H. Andrews.”
Across the face of the check were written the words: “ Good, Isnberg, As. Cashr.”
On the trial, in the Municipal Court at Memphis,, it appeared that the German National Bank, in January, 1868, held a note or draft of Wm. H. Andrews for collection. That on the 10th of January, 1868, at about 3 o’clock, p. M., the check above described was received by the bank in payment of Andrews’ note or draft, and the same delivered to him. That the check was marked “good” when it was received. *213 That when the check was received, it was too late to be presented to the Commercial Bank for payment. That the banking hours were from 9 o’clock, A. M., to 3 o’clock, p. m. That at about 9 o’clock, A. m., of the 11th of January, 1868, the check was presented by ffie messenger of the German National Bank for payment, and payment was refused. That about 10 o’clock, A. M., of the same day, the Teller of the German National Bank presented the check and demanded payment, which being refused, he carried the check immediately to Andrews, the drawer, and informed him that payment had been refused by the Commercial Bank; he then presented it to Andrews and demanded payment, when Andrews informed him that his account with the Commercial Bank was slightly overdrawn that morning, but that it would be made good during the day, and asked the Teller to hold it up, saying it would be paid in the course of the day. The Teller told Andrews he would have it protested, if it was not paid . before 3 o’clock that day. The check not being paid, about 3 o’clock, or very soon thereafter, on the evening of January 11th, 1868, the check was delivered to a Notary for protest. About half an hour afterward, the Notary handed the Teller the notice of protest intended for Andrews, which was delivered to him that evening. There was a notice posted lip in the German National Bank, that checks would not be received in payment of liabilities, unless they were certified to be “good,” by the bank on Avhich they were drawn. At the time the check was certified “good,” Andrews had on deposit in the Com *214 mercial Bank an amount witbin forty or fifty dollars of the amount of the check — that on the 11th of January the amount of Andrews’ deposit was reduced to an amount about $150 less than the amount of the check. At no time after the check was marked, “good,” did Andrews have an amount to his credit equal to the check. That if payment had been insisted on when the check was presented, on- the morning of the 11th of January, it would have been paid. The Commercial Bank closed at 3 o’clock, p. M., of the 11th of January, 1868, and never opened again.
In the case of Schoolfield & Hanauer v. Moon, at the present term, we held that the holder of a bank check has the day on which it was drawn, and the business hours of the succeeding day, on which to, present it for payment, when the holder, drawer and drawee live in the same place; and that during this period the check is at the risk of the drawer. In the present case, it is clear that the holder of the check presented it for payment .during the business hours of the 11th of January, 1868, which was the day after it was drawn; and that upon its nonpayment the liability of the drawer was regularly fixed by protest and notice.
But the present case differs from that of Schoolfield & Hanauer v. Moon, in the fact that the check now in question was marked “ good,” by the cashier of the Commercial Bank, on which it was drawn, and that so certified, it was received by the German National Bank from Andrews, in payment of a draft or note of his, held by that bank for collection. This. *215 raises the inquiry as to the legal effect of the certifi--cate endorsed on the check, in respect to the rights and liabilities of the parties to the paper.
The authorities are decisive, that the certifying of a check as “good,"’ by a bank, not only is an admission that the drawer has on deposit in the bank, the amount of money specified in the check, but it is an understanding that the bank will continue to hold that amount to the credit of the check, or whoever may be its holder, until the same is presented for payment. A check thus certified has the double credit of the drawer and of the bank on which it is drawn. Hence Judge Parsons says, a check so certified circulates or is transmitted as cash, and that this marking, or certifying as “good,” is called in some cases an acceptance, and it is said to have the same effect as an acceptance. It seems to be determined, that such certifying creates an immediate and positive engagement of the bank to pay the check. The bank becomes so far the primary debtor, that no delay in presenting-it — at least, not a delay for a year, or more — would affect the obligation of the bank: 2 Parsons on Notes and Bills, 74.
In Willets v. Phenix Bank, 2 Duer, 120, Oakley, C. J., says: “ The question in this case evidently depends upon the construction to be given to the act of the proper officer of a bank in certifying a check. Is it a mere declaration of an existing fact, or does it create a new and binding obligation on the part of the bank ? Is it simply a declaration, that the maker had then funds in the bank, corresponding with the *216 •amount of the check, or is it an appropriation of those funds to the credit of the check, and a promise that, upon demand, they shall be applied to its payment? If the. former, the defendants are not liable— if the hitter, they have no defense. That the latter is the true legal interpretation of a certified check, we can not doubt. * * The sole and manifest object of the maker or holder of a check, in requiring it to be certified, is to enable him to use it as money; that is, to pass it to others with the same certainty of its acceptance, as affording the same security to a holder; and the bank, in complying with the request, must know that such is its object.”
In Girard Bank v. Bank of Penn Township, 39 Penn. R., 99, Judge Strong says: “ Nor is it easy to •see why the holder of a check marked '"'good,” stands in any different position from that of the original depositor. When a check payable to bearer or order, is presented with a view of its being marked “good,” and is so certified, the sum mentioned in it must necessarily cease to stand to the credit of the depositor. It thenceforth passes to the credit of the holder of the check, and is specifically appropriated to pay it when presented; and as the purpose of having it so certified is not to obtain payment, but to continue with the bank the custody of the money, the holder can have no greater rights than those of any other depositor.”
In Merchants Bank v. State Bank, 10 Wallace, 647, Judge Swayne says: “By the law merchant of this country, the certificate of a bank that a check is good, *217 is equivalent to acceptance. It implies that the check is drawn on sufficient funds in the hands of the drawee; that they have been set apart for its satisfaction, and that they shall be so applied whenever .the check is presented for payment. It. is an undertaking that the check is good then and shall continue good-, and this agreement is as binding on the bank as its notes of circulation, a certificate of deposit payable to the order of the depositor, or any other obligation it can assume. The object of certifying a check, as regards both parties, is to enable the holder to use it as money.”
It is observed that in all the cases cited, the controversy was between the holder of the check, and the bank by which it had been certified as good, and in each case the question involved the liability of tbe certifying bank to the holder. In neither of the cases was there any question involving the liability of the drawer of a certified check, after he has passed it in payment of his debt. The authorities fully establish the position that as between the holder of a check certified “ good,” and the bank which certified it, the bank becomes liable as on an acceptance, and the same is as binding on it as are its certificates of deposit, or its notes of circulation. Hence, in the language of Judge Parsons, “ the bank becomes so far the primary debtor, that no delay in presenting — at least not a delay for a year or more, will affect the obligation of the bank. The’law of demand and notice has no application between the bank and the holder — but” (he adds) “may still have as between the holder and the drawer.”
*218 We have been referred to no authority, nor are we aware of any, in which it is held that the fact of certification of a check, either discharges the drawer absolutely from liability to the holder, or changes the ’law of demand and notice, which governs the relation between the holder and drawer. It will be observed that Judge Parsons says that the law of demand and notice has no application, in respect of a certified check, between the bank and the holder, but that it may have as between the holder and the drawer. This remark would seem to indicate some doubt in his mind on the question. Having no direct authority to govern us, we must seek a solution by the application of the settled principles of commercial law in analogous cases.
We have seen that by the law merchant of this country, the certificate of the bank that a check is “good,” is equivalent to acceptance: 10 Wall., 647. Regarding the certificate on the check as tantamount to an acceptance by the bank, the bank is bound as an original promisor, and the other parties must either be regarded in the light of sureties, or it must be held that the check goes into circulation solely on the credit given to it by the acceptance. In reasoning-on this subject, it is important that we remember the especial purpose and use. of negotiable paper, whether bills, notes or checks, and that from this purpose and use springs all that system of law which belongs to them peculiarly. . It is said by Mr. Parsons, in his work on Bills and Notes, vol. 1, p. 353, “that the drawer of a bill is a surety for the acceptor, and the indorser is as surety for the drawer, and for every *219 previous endorser. The design and effect of this are-to accumulate upon the bill the credit of as many persons as choose to bind their credit to it; for with every new element of security the adequacy of the-paper to represent money, and take its place and do its work in business transactions, is increased.”
Such being the purpose and use of negotiable paper, merchants who thus enable the holder to coin their credit, are entitled to a certain protection; and the measure of this must be, that they are entitled to-all the protection, meaning thereby, all the efforts of the holder to save them harmless, and all the opportunities to save themselves, which are consistent with the free use of the instrument as money. It is for-these reasons that the holder is bound, in the first place, to demand payment of the paper, at its maturity, of the person who as the principal debtor is-primarily bound to pay it. And then, if the amount due is not paid by this debtor, to demand it at once-of each person who is surety for the original debtor.. This is the established law in regard to negotiable paper, such as bills and notes, and the question is, do not the reasons on which this law is founded, apply with equal force to a bank check, which has been certified or accepted by the bank on which it is drawn? One of the objects of having the check marked “good,” is to increase its credit, and cause it to circulate as nearly equal to. money as possible. When the credit of the bank is added to that of the drawer, this object is so far accomplished, that the check has all the-credit of the notes of circulation of the bank, and- *220 therefore is the nearest approximation of any negotiable paper money. It is no doubt true, that the credit of the check may rest mainly on the fact that the bank is -primarily liable, but it is made stronger by the fact that the drawer stands as surety for the bank.
It is said in Morse on Banks and Banking, 282, '“ that if the holder of a check waives his right to immediate payment, by expressly asking for, or even by -accepting the offer of a certification of the bank, it follows that since his act acquits the debts due to him from the drawer, the drawer can thereafter have no cause or basis whatever on which to sue.” And again: “The promise of the bank on the drawer’s account, accepted as satisfactory by the creditor, discharges the debtor, and by the same action deprives him of all further concern in the premises. The bank no longer owes him any duty which he can enforce, or for the breach of which he can sue.”
The author cites no authority for these dieta, but they relate to the effect of the certification of a check by a bank at the request of a holder, upon the subsequent obligations of the bank to the drawer, and are, probably, a correct statement of these relations, under the circumstances stated, but they do not serve to illustrate the rights and obligations existing between the holder of a certified check, although certified at the request of the drawer, and the drawer who has passed it by delivery, in payment of a precedent debt. But the author proceeds further to say, that “by the acceptance or certification of the check, therefore, an *221 entirely new engagement is entered into by tbe bank with tbe bolder and bis legal transferees. This engagement is simply and unconditionally to pay to him or them tbe sum named in the check, on demand.” This is in accordance with late authorities, already cited; but he adds: “The check ceases in fact to be a cheek, and becomes a promise to pay. Accordingly the rules which govern a check no longer govern this instrument.” This is the deduction of the author, and, therefore, is authority only so far as his opinion is-authority. It is based upon no adjudicated case that we have seen, and must be received with qualification. Instead of ceasing to be a check, it becomes a check which carries upon its face the evidence that the drawer has funds in the bank, and' that the bank promises absolutely to pay it when presented. It is still a check, and because of its certification and thereby of the bank’s promise to pay it, its approximation to money and its negotiability in market are increased. The holder of such check can delay presentment for payment without discharging the bank from liability, but if he wishes to hold on to the-liability of the drawer, he must make presentment within the business hours of the next day after, it is-received. This rule, governing checks, is not affected by the fact that it has been certified- by the bank as "good.”
In the case before the court, the proof is conclusive that the check was presented for payment within the busines hours of the day next succeeding its date, and notice immediately given to the drawer of the- *222 refusal of the bank to pay, the drawer recognizing his liability and asking time. This fixes the liability of the drawer, unless he is discharged on some other ground.
It is in proof that the German National Bank held a draft or note' on Andrews, the drawer of the check, and that the check was received by that bank in payment of the note, and the same was delivered up to him. This raises the question, was the check taken in absolute and final discharge and satisfaction of the draft or note, or was it taken as payment only on the condition that the check should be paid? The draft or note of Andrews was taken up from the German National Bank, by giving the bank his own check on the Commercial Bank, marked “good.” It is said by Judge Parsons, that “ Generally, a check is not payment until it is cashed: ” Parsons on Mercantile Law, 92. It was said long ago, that “taking a note for goods sold is a payment, because it is a part of the original contract; but paper is no payment, when there is a precedent debt. For when such a note is given in payment, it is always taken under this condition, to be payment if the money be paid thereon in convenient time: ” Ward v. Evans, 2 L'd Raym., 928. But Judge Parsons says, this now requires some modification in regard to paper transferred in payment of an old debt. It would seem that a transfer, even without endorsement, would not place the solvency of the payor entirely at the risk of the transferee. But he adds, there can now, we think, be no rule in such cases which would control the *223 bargain of the parties. If.it could fairly be inferred from any circumstances that their intention was to «lose and consummate the transaction, without leaving any liability behind it — that is, if it could be shown that the creditor discharged the debt in consideration of the paper, taking upon himself the risk of its payment — then he would certainly be held to his bargain, always supposing an entire absence of fraud on the part of the transferrer. If an express contract to this effect were proved, we know no reason why it should not be regarded; and we see as little reason for saying that such a contract may not be proved by the indirect evidence of circumstances: 2 Parsons on Bills and Notes, 185.
The result is, that it is a question of fact, to be left to a jury, whether under all the facts and circumstances the paper is delivered and received as an absolute payment and discharge, or only a conditional payment. In the present case the proof is, that on the day after the check was drawn, it was presented to the Commercial Bank for payment, and immediately upon the refusal of the bank to pay, the drawer was notified, and he distinctly recognized his liability and asked indulgence.
Upon examination of the charge of the Circuit Judge, we find no error for which the plaintiff in error can have a reversal of the judgment. Nor is there such a preponderance of evidence against the verdict as would justify us in granting a new trial.
The judgment is therefore affirmed.